UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| QINGDAO TANG-BUY INTERNATIONAL IMPORT & EXPORT COMPANY, LIMITED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PREFERRED SECURED AGENTS, INC., et al.,<br><br>　　　　Defendants. | Case No.  15-cv-00624-LB<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[ECF Nos. 42, 60] |

## INTRODUCTION

Plaintiff Qingdao Tang-Buy International Import & Export Company brings several claims against defendants Retail Business Associates, LLC ("RBA") and its alleged owner, Hal Reiland, under California's version of the Uniform Fraudulent Transfer Act ("UFTA") (Cal. Civ. Code §§ 3439 to 3439.12). (First Amended Complaint ("FAC") – ECF No. 37 at 7-9 [¶¶ 35-55].)[1] These defendants now move to dismiss those claims under Rules 12(b)(1), 12(b)(6), 12(b)(7), and 19; they challenge the FAC's fraud allegations under Rule 9(b); and they ask the court to judicially notice certain documents. (ECF Nos. 42, 60.) For the reasons given below, the court grants the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

ORDER 15-cv-00624-LB

request for judicial notice, but denies the defendants' motion.

\* \* \*

## STATEMENT

This is a fraudulent-transfer case arising from goods that, according to the FAC, the plaintiff manufactured for defendant Preferred Secured Agents, Inc. ("PSA"), but for which PSA did not pay. (*See generally* ECF No. 37 at 2-5 [¶¶ 3-23].)

The plaintiff claims that it orally contracted with PSA to supply the latter with children's clothing for PSA to sell at retail. (*Id.*, ¶ 8.) "By early 2014," says the plaintiff, PSA was in arrears and owed the plaintiff almost $270,000. (*Id.*, ¶¶ 6-8.) The two parties reached a written agreement in which PSA acknowledged the debt and signed on to a process by which the plaintiff would receive weekly payments from a "lockbox" (presumably, a financial account) maintained by PSA's lender, TCA. (*Id.*, ¶¶ 8-9.)[2] Under the new agreement, PSA continued to miss obligations to pay the plaintiff. By November 2014, PSA owed the plaintiff $578,377.25. (*Id.*, ¶¶ 10-14.)

Defendants RBA and Reiland, the movants here, now enter the story. The plaintiff claims that PSA wrongfully gave a lien on its assets to RBA (and, by extension, to one of RBA's alleged owners, Reiland), so as to thwart the plaintiff's claim. (The other owner of RBA is allegedly Mark Cardinale, who is also president of PSA.) More specifically, the plaintiff alleges that in April 2014, "two weeks before [RBA] was even formed," PSA gave RBA a "Secured Promissory Note" under which PSA agreed to pay RBA $1.3 million. (*Id.*, ¶ 16.) The note was payable "on demand or on April 4, 2015." (*Id.*, ¶ 16.) The note referenced a security interest that PSA had given RBA in all PSA's assets. (*Id*.) On the same day, PSA executed a "Security Agreement" in RBA's favor. (*Id.*, ¶ 17.)

On May 11, 2014, the plaintiff informed PSA that it needed "immediate payment" of $80,000 for goods that it had shipped the previous year. (*Id.*, ¶ 18.) The next day, RBA filed a UCC-1 financing statement with the California Secretary of State, recording its security interest in, and

---

[2] The defendants explained at the motion-to-dismiss hearing that TCA provided a loan facility to fund PSA's operations.

placing a lien on, "all PSA assets." (*Id.*, ¶ 19.) Finally, in December 2014, PSA signed a "Confession of Judgment" in RBA's favor. That document states: "RBA has made demand upon PSA for payment . . . [under] the Promissory Note. . . . PSA . . . is unable to pay the principal and interest. PSA agrees to confess judgment in favor of RBA for the full amount of principal and interest and to allow foreclosure by RBA of all the assets of PSA." (*Id.*, ¶ 21) (paragraph break omitted).

\* \* \*

## ANALYSIS

The plaintiff brings four claims against RBA and Reiland: 1) intentional fraudulent transfer of assets under California Civil Code § 3439.04(a)(1)[3]; 2) constructive fraudulent transfer of assets under § 3439.04(a)(2); constructive fraudulent transfer of assets under § 3439.05; and conspiracy to fraudulently transfer assets under § 3439.04(a)(1). (ECF No. 37 at 7-10 [¶¶ 35-55].) Under California's UFTA,

> a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due.

*Hasso v. Hapke*, 227 Cal. App. 4th 107, 121-22 (2014) (quoting Cal. Civ. Code § 3439.04(a)(1)-(2)). "A transfer by a debtor is fraudulent as to creditors whose claims arose *before* the transfer if the debtor made the transfer (1) without receiving reasonably equivalent value in exchange, and (2) either (a) was insolvent at the time of the transfer, or (b) became insolvent as a result of the transfer." *Hasso*, 227 Cal. App. 4th at 122 (quoting Cal. Civ. Code § 3439.05). "A transfer described in" § 3439.04(a)(1) "is characterized as actual fraud, and a transfer described in either" § 3439.04(a)(2) or 3439.05 "is characterized as constructive fraud." *Id.*

---

[3] All statutory citations in this order are to the California Civil Code unless otherwise specifically noted.

ORDER 15-cv-00624-LB

3

**1. Request for Judicial Notice**

The defendants ask the court to judicially notice four documents. (ECF No. 42-1.) The first is a cross-complaint that RBA and PSA filed against the plaintiff in an action in the Superior Court of Alameda County. (*Id*. at 1-11.) The remaining three are UCC-1 financing statements. These all reflect security interests in PSA's assets. One is recorded by an entity that is not involved in this case (*id*. at 15); the other two reflect the interests of TCA (*id*. at 12) and RBA (*id*. at 17). The plaintiff objects to this request.

The defendants make liberal use of the facts appearing in these documents. As the plaintiff rightly observes, to a large extent, the defendants' arguments under Rules 12(b)(1), 12(b)(6), and 19 do not analyze the contents of the challenged FAC so much as raise extrinsic arguments on the back of facts alleged in the judicial-notice material. This observation will resonate through certain points of the discussion below.

The decision to take judicial notice generally lies within the court's discretion. *Lee v. City of Los Angeles*, 250 F.3d 668, 699 (9th Cir. 2001); *see generally* Fed. R. Evid. 201. "Courts readily take judicial notice of 'undisputed matters of public record' and 'documents on file in federal or state courts.'" *Century Indemn. Co. v. Marine Grp., LLC*, 2015 WL 5144330, *1 (D. Or.) (quoting in part *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)). The documents in question are of those types.

The court makes two preliminary notes. First, because judicial notice can be denied where a document's authenticity is disputed, *cf.*, *e.g.*, Fed. R. Evid. 201 (b), (e) (implying that parties may "reasonably . . . dispute[]"proffered documents), the better practice is to file copies that are certified as true and accurate by their proper custodians. None of the target documents here is so certified. (*See* ECF No. 42-1, *passim*.) That said, the plaintiff has not challenged the authenticity of the material. Second, the defendants did not usefully reply to the plaintiff's arguments against the court taking judicial notice of the facts that the subject documents contain. The defendants merely reply that they have "the right to seek judicial notice" and that the plaintiff's arguments are "without merit." (ECF No. 50 at 3.) Undeveloped judicial-notice arguments may be deemed waived. *Crawford v. Countrywide Home Loans, Inc*., 647 F.3d 642, 649-50 (7th Cir. 2011). The

ORDER 15-cv-00624-LB

4

court does not deem the defendants' request for judicial notice waived but it does note that, as a response to the plaintiff's developed analysis of this topic — a topic that impacts the defendants' various arguments rather significantly — the defendants' terse response was unhelpful.

The court will nevertheless judicially notice these documents. But that notice comes with important qualifications. A sister court recently explained the limits of judicial notice:

> A court may take judicial notice of complaints, briefs, and opinions filed in another case to determine what issues were before that court and were actually litigated. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, *a court may not take judicial notice of facts presented in those documents or in court opinions for the purpose of considering those facts to be established in the case currently before them*. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) (citing *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("As a general rule, *a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention* in a cause before them.")).

*Century Indemnity*, 2015 WL 5144330 at *2 (emphases added). The effects of this limitation will be seen in relevant parts of the discussion below.

\* \* \*

## 2. Rule 12(b)(1) — The Plaintiff Adequately Invokes the Court's Subject-Matter Jurisdiction

The defendants move to dismiss this case for want of subject-matter jurisdiction under Rule 12(b)(1). They argue that the plaintiff's fraudulent-transfer claims are not ripe for adjudication. The defendants specifically contend that, before it can sue them for fraudulent transfer, the plaintiff must first reduce its claim against PSA to judgment. (ECF No. 42 at 5.) The plaintiff is "using this litigation as [the vehicle for] collection of [its] claim" against PSA, the defendants write, "before it has adjudicated [that] claim." (*Id.*) But, until it does get a judgment against PSA for the money allegedly owed — in fact, until the plaintiff litigates against "*all* of PSA's other secured and unsecured creditors," and proves that it has the highest-priority claim — until then, the defendants argue, the plaintiff's claims are not ripe and present no Article III case or controversy. (*See id.* at 4-6.)

The first thing to observe is that the defendants bring a "facial" rather than a "factual" Rule 12(b)(1) challenge. A district court in this circuit recently explained the difference:

ORDER 15-cv-00624-LB

5

> [A] party invoking Rule 12(b)(1) to challenge subject matter jurisdiction may bring a "factual" attack, one that relies on evidence outside the pleadings and requires the court to resolve factual disputes. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In a "facial" jurisdictional attack, by contrast, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

*Weidenhamer v. Expedia, Inc.*, 2015 WL 1292978, *3 (W.D. Wash.) The defendants here have not properly adduced any facts "outside the pleadings" to consider in their jurisdictional challenge. Their request for judicial notice cannot establish the underlying *factual content* of the target documents (*see Century Indemnity, supra*); and they filed a declaration only in connection with their reply brief — something that, holding other considerations aside, the court would not consider without giving the plaintiff further opportunity to address. Because the defendants have not properly invoked evidence beyond the challenged FAC, the court treats their Rule 12(b)(1) motion as a facial challenge. *See Weidenhamer*, 2015 WL 1292978 at *3. "The court accordingly analyzes subject matter jurisdiction by accepting as true the well-pleaded allegations of the complaint." *Id. (*citing *Mendia v. Garcia,* 768 F.3d 1009, 1012 (9th Cir. 2014)).

The defendants' jurisdictional arguments moreover are incorrect. A "claim" need not be reduced to judgment before one is a "creditor" under California's UTFA, as the defendants maintain, or before one can sue for fraudulent transfer. The relevant statutes show the defendants' error. A "creditor" is one "who has a claim." § 3439.01(c). A "claim," in turn, "means a right to payment, *whether or not the right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 3439.01(b) (emphasis added).

The plaintiff's fraudulent-transfer claims are not unripe because its underlying claim against PSA has not been reduced to judgment. The court denies the defendants' Rule 12(b)(1) motion.

\* \* \*

### 3. Rule 12(b)(6) — The Plaintiff Sufficiently States a Claim

The defendants next argue that, for a number of reasons, the FAC fails to state a claim on which relief can be granted, and so must be dismissed under Rule 12(b)(6). (ECF No. 42 at 6-8; ECF No. 60 at 8-10.) The court disagrees.

Rule 12(b)(6) requires the court to assume the truth of the complaint's factual allegations and

ORDER 15-cv-00624-LB

to credit all reasonable inferences arising from those allegations. *Sanders v. Brown,* 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must allege facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint specifically refers if the document is central to the party's claims and its authenticity is not in question. *See, e.g., Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

\* \* \*

**3.1 The plaintiff sufficiently alleges that it is a "creditor" with a "claim"**

The plaintiff sufficiently alleges that it is a "creditor" with a "claim" within the meaning of California's UFTA. There is no merit in the defendants' contrary contention. Recall the UFTA's simple, broad definitions of "creditor" and "claim" that were quoted above. The FAC specifically lays out the facts that gave rise to PSA's debt and that created the challenged transfer. (*See* FAC – ECF No. 37 at 2-5.) The FAC thus sufficiently alleges facts showing that the plaintiff "plausibly" meets these definitions.

\* \* \*

**3.2 The challenged "judgment lien" constitutes an "asset transfer"**

The defendants next argue that "RBA's judgment lien" — meaning, in its fuller scope, both the challenged $1.3-million loan from RBA to PSA and the subsequent confession of judgment — "is not an allegation of an asset or an asset being transferred" to the defendants. (ECF No. 42 at 7.)

This is incorrect. Sections 3439.04 and 3439.05 both provide that "[a] transfer made *or obligation incurred* by a debtor" may be "fraudulent as to a creditor," whose "claim arose before or after" the "transfer was made *or the obligation was incurred* . . . ." §§ 3439.04(a), 3439.05

ORDER 15-cv-00624-LB

7

(emphases added).The PSA-to-RBA debt may thus constitute an "asset transfer." A legislative note to § 3439.04 reinforces this conclusion: "Unlike the Uniform Fraudulent Conveyance Act as originally promulgated," the note states, "this [California] Act *does not prescribe different tests when a transfer is made for the purpose of security and when it is intended to be absolute*." § 3439.04 legis. comm. note 3 (emphasis added). There need not be, in other words, the wholesale handover of some more or less unitary asset. For purposes of California's fraudulent-transfer statutes, a debt and a confessed-judgment interest can both be actionable asset transfers.

The FAC plausibly claims that there was an actionable asset transfer.

\* \* \*

### 3.3 The plaintiff adequately pleads facts from which an "intent to defraud" may plausibly be inferred

The defendants also contend that the plaintiff fails to sufficiently allege facts that plausibly show that RBA and Reiland intended to defraud it. (ECF No. 42 at 8; ECF No. 60 at 9-10.)

The court disagrees. The FAC alleges more than enough facts from which intent to defraud may plausibly be inferred, given the criteria of the controlling statute. Section 3934.04(b) provides a non-exclusive list of factors that may be considered "[i]n determining actual intent" to "hinder, delay, or defraud" a creditor under § 3934(a)(1). The following factors seem relevant to this case: whether, "before the transfer was made or the obligation was incurred, the debtor [in this case, PSA] had been sued or threatened with suit" (§ 3439.04(b)(4)); "[w]hether the transfer was of substantially all the debtor's assets" (§ 3439.04(b)(5)); "whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or of the obligation incurred" (§ 3439.04(b)(8)); "[w]hether the debtor was insolvent or became insolvent shortly before or shortly after" the transfer or obligation (§ 3439.04(b)(9)); "[w]hether the transfer occurred . . . shortly after a substantial debt was incurred" (§ 3439.04(b)(10)).

The plaintiff's factual allegations (ECF No. 37 at 3-5 [¶¶ 8-23]) support most or all these as plausible inferences — and not very remote inferences. (Which is obviously not to say that the plaintiff will be able to prove, or even raise a triable issue, on any of these points.) The FAC sufficiently alleges an intent to defraud.

ORDER 15-cv-00624-LB

8

* * *

### 3.4 The TCA "lockbox" provides no ground for dismissing the FAC

The defendants' remaining 12(b)(6) arguments are of a different cast. Recall first that, as the FAC alleges, at some point the plaintiff contracted to receive weekly payments from the "lockbox" account maintained by PSA's lender, TCA, to reduce the amount that PSA then owed the plaintiff. The defendants argue that this "lockbox" agreement means that the plaintiff cannot state a viable fraudulent-transfer claim. The defendants write: "[The plaintiff] does not have a claim but instead a contractual right" to receive payments from the "lockbox" and "is therefore not a 'claimant' or creditor" under § 3934.04. (ECF No. 42 at 7; ECF No. 60 at 5, 8.) The plaintiff "therefore has not [alleged] and cannot allege a cause of action against" the defendants. (ECF No. 42 at 7.)

The court is not persuaded. That the plaintiff had some contractual right to reduce PSA's arrearage speaks in no obvious way, and in no way that the defendants have clearly explained (their arguments on this point being conclusory), to whether the plaintiff qualifies as a "claimant" and "creditor" under the plain definitions of § 3439.01. If the plaintiff's rights under the lockbox do somehow unravel its ability to stand as a "creditor" under UFTA, then that is in the nature of a defense on the merits. Assessing that defense will need more logical and legal elaboration than the defendants have given it here, and probably more factual elaboration than a Rule 12(b)(6) inquiry will allow. The defendants' "lockbox" argument provides no basis for dismissing the FAC.

* * *

### 3.5 TCA's lien provides no ground for dismissing the FAC

The defendants also argue that the FAC states no viable claim because of a first lien that TCA held on PSA's assets. More precisely, the defendants argue that, because PSA's assets were already the subject of a "valid lien" (by TCA), they cannot have been the subject of an actionably fraudulent transfer. (ECF No. 42 at 7.) The defendants write: "[E]ncumbered assets are not assets that can be transferred pursuant to § 3439.01." (*Id.*) (citing *Hasso*, 227 Cal. App. 4th at 126).

The defendants misread *Hasso*. It is true, as the defendants observe, that property cannot be an "asset" under UFTA "to the extent that it is encumbered by a valid lien." § 3439.01(a)(1). But *Hasso* does not stand for the broad rule that "encumbered assets are not assets that can be

ORDER 15-cv-00624-LB

9

[fraudulently] transferred" under California's UFTA. The UFTA defendant in *Hasso* was an investment company. This company had a contractual option to withdraw its investment from a hedge fund if the fund performed poorly. *Hasso*, 227 Cal. App. at 112-14. The California Court of Appeal held that this option was a "valid lien" on the investment under UFTA; the right to have the money returned was not an "asset" under § 3934.01(a)(1) and returning the money was not a "transfer" under § 3934.01(i). *Id.* at 126. (Creditors of the hedge fund thus could not claim that the returned assets were fraudulently transferred away from them back to the defendant investment company. *See id.* at 122, 125-26.) This does not apply to the challenged transfer from PSA to RBA. As the plaintiff rightly explains, *Hasso* suggests that the subject lien "must be held *by the actual transferee* before the transfer" falls outside UFTA. (*See* ECF No. 62 at 8) (emphasis in original). "That is, for RBA's argument to work, RBA itself must hold the valid lien." (*Id.*.) That is essentially the court's reading of *Hasso*. For *Hasso* to apply, and take the challenged asset transfer out of UFTA, the "valid lien" would have to be held by *RBA* or *Reiland* — not, as the defendants argue, by TCA.

\* \* \*

**3.6 The FAC does not refer to or depend upon PSA's or RBA's "ownership documents"**

Finally under Rule 12(b)(6), defendant Reiland contends that the FAC states no viable claim against him because, whatever the FAC alleges, the plaintiff "knows" that he does not have a "controlling interest" in PSA and "is not a member of RBA." (ECF No. 50 at 2.) The defendant here cites the declaration that he submitted in connection with his reply brief. (ECF No. 50-1.) To that declaration the defendant attaches what he calls the "ownership documents" of PSA and RBA. (*Id.* at 3-38.)

The defendant cites *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *abrogated on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002), for the rule that a Rule 12(b)(6) analysis may look beyond the complaint, to extrinsic material, if (in the defendant's words) that material is "referred to" in the complaint and is "central or integral" to the plaintiff's claims. (ECF No. 50-2 at 2.) The defendant then asserts: The plaintiff "is referencing the ownership documents of PSA and RBA." (ECF No. 50-2 at 2.)

ORDER 15-cv-00624-LB

10

That is incorrect. The FAC nowhere refers to the "ownership documents" of PSA or RBA. (*See* ECF No. 37, *passim*.) Nor is any such document "integral" to the plaintiff's claim. The FAC does allege that defendant Reiland "holds an ownership interest in RBA and PSA." (*Id.* at 3 [¶ 7].) But that is not the same as "specifically referring" to a particular document (which the FAC does not), to say nothing of the specific documents that defendant Reiland attaches to his reply declaration. Ownership may be proved in various ways; it need not flow from only certain documents. Ownership may change in myriad ways; documents that once correctly reflected who owned a company, and in what way, may later come to be inaccurate and so useless for the needs of a given lawsuit.[4] All of which is to say that, by alleging that Reiland has an "ownership interest" in PSA and RBA, the FAC neither specifically refers to, nor depends "centrally" on, any given document — including, again, the specific documents in the reply declaration. The court cannot look to this material in analyzing the FAC under Rule 12(b)(6). And, if it could, it would almost certainly give the plaintiff a chance to address material that was submitted for the first time on reply.

\* \* \*

**4. Rule 9(b) — The Plaintiff Pleads Fraud With Sufficient Particularity**

The defendants also contend that the plaintiff has failed to plead its claims with sufficient particularity under procedural Rule 9(b). (ECF No. 60 at 8, 10.) The court thinks otherwise.

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, *intent*, knowledge, and other conditions of a person's mind *may be alleged generally*." Fed. R. Civ. P. 9(b) (emphases added). In the Ninth Circuit Rule 9(b) means that fraud must be pleaded "with a high degree of meticulousness." W. Schwarzer *et al.*, *Fed. Civil Procedure Before Trial* ¶ 8:155 (2015) (quoting *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000)). Nevertheless, Rule 9(b) "does not supplant

---

[4] The defendant himself gives an example of this. After pointing to facts meant to show that he was not an "initial" PSA owner, he offers a cryptic footnote saying only that, "The ownership [of PSA] changed in 2014[;] however[,] those documents are not referenced by" the plaintiff. (ECF No. 50 at 2 n. 1.) The defendant does not explain how PSA's ownership changed. (*Id.*) The point being that even the specific document that the defendant refers to does not nail down the question of PSA's ownership.

ORDER 15-cv-00624-LB

11

Rule 8(a)'s [core rule of] notice pleading." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (cited in Schwarzer, *supra*, ¶ 8:157). Even after *Iqbal–Twombly*, Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud" to show that the claim is plausible. *Grubbs*, 565 F.3d at 186 (internal quotations omitted). Furthermore, Rule 9(b) "serves several purposes," such as "eliminat[ing] fraud actions in which all the facts are learned after discovery," and, maybe above all, "ensur[ing] that a defendant has sufficient information to formulate a defense by providing adequate notice of both the nature and grounds of the claim." *See* Schwarzer, *supra*, ¶ 8:156 (citing cases).

The plaintiff's allegations satisfy Rule 9(b). The FAC pleads the alleged fraudulent transfer, in all its aspects, with enough specificity, enough "meticulousness," to give the defendants "adequate notice of the nature and grounds" of the plaintiff's claims. The defendants perhaps most robustly challenge the FAC's allegations concerning intent to defraud (*see* ECF No. 60 at 10) (challenging absence of specific allegations on matters pertaining to fraudulent intent) — and, as discussed earlier, the FAC alleges deceptive intent largely by plausible inference. But that is not a viable attack under Rule 9(b). That rule expressly states that "intent . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The plaintiff's allegations comport with the letter and purpose of Rule 9(b).

\* \* \*

**5. Rule 19 — TCA Need Not Be Joined as an Indispensable Party**

The defendants move to dismiss the FAC under Rules 12(b)(7) and 19(b) for failing to join TCA as a putatively indispensable party. (ECF No. 42 at 8-9.) Rule 12(b)(7) contemplates an early dismissal for "failure to join a party under Rule 19." The core of Rule 19 provides:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). The defendants contend that TCA is indispensable under this rule. They write:

> TCA has a perfected security interest in all of PSA's assets. If [the plaintiff] is successful in its claim against PSA, [the plaintiff] would not be entitled to any assets of PSA because TCA has a valid perfected lien against those assets. As a result, TCA must be a party to the action in order for there to be a full adjudication on [the plaintiff's] claims.

(ECF No. 42 at 9.) Continuing without TCA would, in the defendants' view, prejudice them:

> TCA has superior right to the assets of PSA and absent their presence in the litigation[,] TCA and the other litigants would be prejudiced. Reiland and the other defendants would be forced to litigate the right to the PSA assets with the understanding that if successful, TCA would be entitled to all of those assets. Therefore, Reiland and the other defendants would be prejudiced having to litigate this matter.

(*Id.*)

The court will not dismiss the FAC under Rule 19 on the present record. First, the defendants' Rule 19(b) argument relies on facts that the FAC does not plead, but which the defendants invoke from their judicially noticed UCC-1 statements. Even accepting the UCC-1s as valid, and evidence of a valid lien, the defendants' indispensable-party argument invokes a more fully blown factual context than those UCC-1s describe. In other words, addressing the Rule 19 argument, and the effect of TCA's lien, requires looking more deeply into the facts behind the lien. The UCC-1s do not themselves afford that deeper look.

Second — and this may be the more decisive point — the defendants have not given the court sufficient legal argument for dismissing the FAC under Rule 19. It is far from obvious, after all, that even an alleged first lienor like TCA must be joined in a suit like this. The immediate question in this case is not the relative status of the plaintiff's and TCA's claims to PSA's assets. The immediate question is whether the debt and confession of judgment between the present defendants constituted a fraudulent transfer with respect to the plaintiff. That question has no obvious doctrinal link to TCA or any other absent lienor. It may be true that, if the plaintiff succeeds on the fraudulent-transfer claim, and reduces that to judgment, some further suit might

ORDER 15-cv-00624-LB

13

need to sort out competing claims to PSA's assets. But that is not this case. That is not where we are at the moment. And, if the present situation does demand that absent lienors be brought in, then that will be true in many garden-variety tort and contract suits in which a defendant may be subject to claims by other potential litigants; the sweep and impact of Rule 19(b) would be vastly larger than has been previously understood. At all lengths, the defendants have not given the court sufficient legal authority to dismiss the plaintiff's fraudulent-transfer claims — which, again, have nothing to do with TCA — under Rules 12(b)(7) and 19.

\* \* \*

## 6. Attorney's Fees

The defendants also move to dismiss the plaintiff's request for attorney's fees. The defendants correctly cite the basic American (and California) rule that such fees can normally be awarded only under a contract or statute. (ECF No. 42 at 10.) The plaintiff's fee request appears among the several demands made in the FAC's prayer for relief. (ECF No. 37 at 9.) The fee request is expressly made under, though it is "not limited to," California Civil Code § 1717.5. (*Id.*) That statute permits attorney's-fee awards to the prevailing party in certain contract suits. *Id.* The court will not strike the fee request at this early juncture. This decision may be practically moot, in any event; the plaintiff is preparing to file a new complaint and has explained that the attorney-fee request will be differently and more elaborately stated.

\* \* \*

## CONCLUSION

The court grants the defendants' request for judicial notice with the limitations described above. The defendants' motions to dismiss are otherwise denied.

This disposes of ECF Nos. 42 and 60.

**IT IS SO ORDERED.**

Dated: December 3, 2015

_____
LAUREL BEELER
United States Magistrate Judge

ORDER 15-cv-00624-LB

14