United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

QINGDAO TANG-BUY INTERNATIONAL IMPORT & EXPORT COMPANY, LIMITED,

Plaintiff,

v.

PREFERRED SECURED AGENTS, INC., et al.,

Defendants.

Case No. 15-cv-00624-LB

**ORDER DENYING MOTION TO STAY UNDER *COLORADO RIVER* AND GRANTING THE MOTION TO DISMISS THE CONTRACT CLAIM**

[Re: ECF No. 142]

**INTRODUCTION**

Plaintiff Qingdao Tang-Buy International Import & Export Company ("Tang-Buy") sued the defendants after one of the defendants — Preferred Secured Agents ("PSA"), a retail entity that operates as "Sprocket Kids" — allegedly did not pay for goods that the plaintiff manufactured for PSA.[1] The alleged debt is $578,377.25.[2] PSA cross claimed against Galaxy Custom House Brokers, a customs broker (currently in default[3]), and Great Central Transport, an alleged agent of

[1] Second Amended Complaint ("SAC") — ECF No. 76. Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] SAC ¶ 15.

[3] PSA has been in contact with Galaxy's lawyer and assumes they will move to set aside the default. Response Re Service Update — ECF No. 178.

Galaxy that transports shipping containers from the Los Angeles port to distribution warehouses; PSA charges breach of contract and conversion from their failure to transport and deliver goods in 2014.[4] The parties also are litigating a related case in Alameda Superior Court, and Great Central moves to stay the federal case under the *Colorado River* abstention doctrine. Alternatively, it moves to dismiss the contract claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[5]

The court held a hearing on November 3, 2016. The court denies the motion to stay under *Colorado River* and grants the motion to dismiss.

**STATEMENT**

The plaintiff generally claims breach of contract, and it also claims a fraudulent transfer to the defendant Retail Business Associates ("RBA") after PSA gave RBA a secured interest to prevent the plaintiff from collecting on the debt that PSA owes it.[6] The defendants are PSA, RBA, Hal Reiland, Mark Cardinale, and Glen Hartman.[7] The individuals all are affiliated with PSA, and Mr. Hartman allegedly finances PSA's operations and has the controlling interest in PSA and RBA.[8] Mr. Reiland also is counsel of record for PSA and RBA.

The court's order denying the defendants' motion to dismiss explains the contract between the plaintiff and PSA whereby the plaintiff agreed to provide PSA with children's clothes to sell at retail, PSA's subsequent arrearage, PSA's acknowledgment of its debts, and PSA's agreement to make weekly payments to Tang-Buy from a "lockbox" (a financial account) maintained with PSA's lender TCA.[9] By November 2014, PSA owed Tang-Buy $578,377.25.[10]

---

[4] Answer and Counter/Cross Claims — ECF No. 121 at 32–35.

[5] Motion — ECF No. 142.

[6] *See, e.g.*, SAC – ¶¶ 11–15, 20–21.

[7] SAC ¶¶ 4–8.

[8] Id.

[9] Order — ECF No. 73 at 2.

[10] *Id.* at 2; SAC ¶ 15.

The order and the SAC describe the plaintiff's claim that PSA gave a $1.3 million lien on its assets to RBA to secure PSA's debt to Glenn Hartman (the principal of RBA) to thwart the plaintiff from collecting the $578,377.25.[11] On May 11, 2014, the plaintiff informed PSA that it needed "immediate payment" of $80,000 for goods that it had shipped the previous year and without it, it would not release more goods.[12] The next day, RBA filed a UCC-1 financing statement with the California Secretary of State, recording its security interest in, and placing a lien on, "all PSA assets."[13] Finally, in December 2014, PSA signed an allegedly illusory "Confession of Judgment" in RBA's favor. That document states: "RBA has made demand upon PSA for payment . . . [under] the Promissory Note. . . . PSA . . . is unable to pay the principal and interest. PSA agrees to confess judgment in favor of RBA for the full amount of principal and interest and to allow foreclosure by RBA of all the assets of PSA."[14]

PSA counterclaimed and cross claimed against persons and entities involved with the delivery and storage of the goods.[15] The cross claims at issue here are against the customs broker Galaxy and Great Central Transport, which transports containers from the port of entry to the warehouse.[16] The claims are: (1) breach of contract to deliver goods in 2014; (2) conversion of those goods; and (3) declaratory relief.[17]

The breach-of-contract claim alleges (1) PSA's agreement with Galaxy to clear the goods through Customs and thereafter transport them, (2) Galaxy's arrangement with its agent/contractor Great Central Transport to transport the goods (as memorialized in written delivery orders), (3) Galaxy's breach of the contract by failing to clear the goods through customs and thus failing to deliver them to PSA, (4) Galaxy's and Great Central's failure to pick up the containers, thus

[11] Order — ECF No. 73 at 2; SAC ¶¶ 20–21.

[12] SAC ¶ 23.

[13] SAC ¶ 24.

[14] SAC ¶ 26.

[15] Answer and Counter/Cross Claims — ECF No. 121.

[16] *Id.* at 31–34.

[17] *Id.* at 32–34, 43–44.

United States District Court
Northern District of California

incurring fees, and thereafter demanding payment for their expenses and holding the goods hostage, and (5) PSA's resulting damage.[18]

The conversion claim incorporates the earlier allegations and also alleges (1) PSA "contracted and employed Galaxy and its agent and/or contractor Great Central" to deliver the 2014 containers from the Los Angeles port to PSA's distribution center, (2) they delivered several containers but failed to deliver two, and (3) thus they wrongly failed to deliver containers with goods valued at $2.8 million retail, which means that PSA can't sell the goods and pay Tang-Buy and other manufacturers.[19]

PSA's eleventh claim for declaratory relief asserts an entitlement to goods held by Great Central and Mizrahi and thus is predicated on the claims for breach of contract and conversion.[20]

Great Central's counsel asked for judicial notice of documents in the Alameda case (generally discussed above and in the court's order denying Tang-Buy's anti-SLAPP motion):[21] (1) the December 12, 2014, confession of judgment in the Alameda case; (2) a partial Alameda docket sheet, which reflects some of the case events; (3) the January 13, 2015, judgment entered against PSA and in favor of RBA; (4) the February 20, 2015, writ of possession for $1.406 million reflecting RBA's attempt to levy upon PSA's property, including property held by Great Central; (5) Great Central's May 2015 third-party claim filed in the Alameda case for a warehouseman's lien for storage fees owed to it for storage and transport of goods on behalf of PSA; (6) Tang-Buy's June 2015 intervenor complaint in the Alameda case to set aside the judgment on the ground that PSA and RBA colluded to frustrate PSA's creditors (including Tang-Buy), and the subsequent set aside on April 2, 2016, of the confession of judgment; and (7) RBA's second amended cross complaint (as PSA's successor) against Great Central and others, filed in June 2016; it is the operative cross complaint in the Alameda case.[22] The docket sheet shows case events such as

---

[18] *Id.* at 32-33.

[19] *Id.* at 34.

[20] *Id.* at 43.

[21] Order — ECF No. 186 at 4–5.

[22] Request for Judicial Notice and Exs. — ECF No. 142-1.

demurrers, motions to strike, motions to quash, and motions to compel.[23]

PSA did not challenge the authenticity of the public records. The court takes judicial notice of them for the reasons stated in its order denying the defendants' motion to dismiss.[24]

## ANALYSIS

Great Central moves to (1) stay the proceedings under the *Colorado River* abstention doctrine, on the ground that the Alameda action covers generally the same issues, and (2) dismiss the contract claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[25]

### 1. *Colorado River* Abstention

Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interests of "[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); *see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983). "Exact parallelism" between the state and federal actions is not required; it is enough if the two actions are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Nonetheless, "the *Colorado River* doctrine is a narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817). Accordingly, a stay of proceedings pursuant to the *Colorado River* doctrine is appropriate only where "exceptional circumstances" are present. *Id.*[26]

---

[23] *Id.* Ex. B — ECF No. 142-1 at 21–25.

[24] Order — ECF No. 73 at 4–5 (courts readily take judicial notice of documents on file in federal or state courts; the court took notice of the documents to show the procedure and did not notice facts in them).

[25] Motion — ECF No. 142.

[26] "[D]istrict courts must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under *Colorado River*." *Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1138 (9th Cir. 1990). This "ensures that the federal forum will remain

United States District Court
Northern District of California

*Colorado River* and Ninth Circuit opinions have identified eight non-exhaustive factors to be considered on a motion to stay or dismiss under *Colorado River*: (1) whether the state court first assumed jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; (7) whether exercising jurisdiction would promote forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *See id.* at 870; *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978-79 (9th Cir. 2011). These factors should be weighed in a "pragmatic, flexible manner with a view to the realities of the case at hand" and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 16, 21. Factors that are irrelevant to the particular inquiry are disregarded. *See Nakash*, 882 F.2d at 1415 n.6.

The circumstances here are not exceptional and do not warrant abstaining under *Colorado River*. The balance already is "heavily weighted in favor of the exercise of jurisdiction," *Moses*, 460 U.S. at 16, and the relevant factors support retaining jurisdiction over the action.

First, the court sees no particular issues with the state court's initial jurisdiction over the confession of judgment, which morphed later into the larger state action. PSA confessed judgment in December 2014, the judgment issued in January 2015, and Tang-Buy filed its federal lawsuit in February 2015 charging the defendants with breach of contract and fraud. The claims in this case thus came first. Thereafter, Great Central filed its third-party claim in state court in May 2015 regarding its storage fees (an ancillary issue to the overall litigation). In June 2015, Tang-Buy filed its intervenor complaint in state court, and the state court set aside the judgment in April 2016, which is relevant context for the federal litigation but not dispositive of it. Meanwhile, PSA cross claimed against Great Central in the federal case on May 13, 2016.[27] Thus, by May 2016, the

---

open if for some unexpected reason the state forum does turn out to be inadequate," "conserve court resources," and avoid the risk of "mak[ing] premature and speculative legal findings about the preclusive effect of various possible state judgments in choosing between a stay and a dismissal." *Attwood v. Mendocino Coast Dist. Hosp.*, 886 F.2d 241, 243, 245 (9th Cir. 1989) (quotation omitted).

[27] ECF No. 98. PSA amended its Answer and Counter/Cross Claims in July 2016. *See* ECF No. 121.

United States District Court
Northern District of California

federal case — more or less in its current form — was in place. (PSA filed the operative cross complaint in the state case in June 2016.)

This analysis also goes to the third and fourth factors. Tang-Buy's claims against the defendants in the federal litigation initiated the litigation of the main dispute (including the claims for fraud for the allegedly collusive confession of judgment in state court). When one considers the claims and counterclaims between Tang-Buy and the defendants, the federal litigation not only touches on collateral claims such as PSA's cross claims against Great Central, it potentially disposes of them, at least in part. The court thinks staying the litigation in part might contribute to piecemeal litigation. Also, at this point, the court is very familiar with the litigation.

Second, the parallel action is in Alameda County Superior Court, near this court. It is as convenient a forum as this one is.

Third, the court sees no issue regarding the application of state law. The court has applied it in the lawsuit to date, and it does so regularly in the exercise of its diversity jurisdiction.

Fourth, the state lawsuit does not resolve all claims in the federal lawsuit, especially Tang-Buy's claims. Again, the central dispute between Tang-Buy and the defendants in large measure drives the litigation, and overall, the court thinks that keeping the case enhances wise judicial administration.

Given the heavy weight in favor of the court's exercise of jurisdiction and this pragmatic weighing of the realities of this case, the court declines to stay the case under *Colorado River*. The court does not discount Great Central's efforts and burdens in state court but thinks it can manage the burdens by active case management and staging the federal litigation.

**2. Rule 12(b)(6) Motion to Dismiss**

The background rule here is Rule 8(a)(2), which states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s "pleading standard . . . does not require 'detailed factual allegations,'"

---

There were earlier iterations of the cross claims against other parties. *See* ECF No. 10.

even after *Iqbal* and *Twombly*, and "'[s]pecific facts are not necessary' for pleadings to satisfy Rule 8(a)(2)." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("detailed"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) ("specific") (quoting *Erickson v. Pardus,* 551 U.S. 89 (2007)). "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).

"On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." *Chavez*, 683 F.3d at 1108 (quoting *Twombly,* 550 U.S. at 555). Indeed, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez*, 683 F.3d at 1108 (citing *Iqbal,* 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez*, 683 F.3d at 1108-09 (citing *Iqbal,* 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Chavez*, 683 F.3d at 1108-09 (quoting *Iqbal*, 556 U.S. at 679).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

The issue here is whether PSA stated a claim against Great Central for breach of contract. The court concludes that it did not.

To state a claim for breach of contract, a plaintiff must show the following: (1) a contract existed; (2) the plaintiff performed his duties or was excused from performing his duties under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages as a result of that breach. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

United States District Court
Northern District of California

"Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007).

The complaint here alleges only a contract with Galaxy and not Great Central. PSA does not dispute that Great Central is not a party to the contract. Instead, it argues that it alleged that Great Central was Galaxy's agent, and as an agent, Great Central is liable for Galaxy's breach of its contract to transport the containers to PSA.[28] Its allegation regarding agency is conclusory. The complaint sufficiently alleges that Galaxy is the customs broker and had an obligation to transport the goods, and it alleges that Galaxy arranged with Great Central (an apparently independent transportation company) to transport the goods. A bare allegation of agency does not plausibly state a claim against Great Central for breach of contract, given that Great Central undisputedly is not a party to the contract. Moreover, the allegation that Great Central wrongly failed to deliver two containers establishes only the conversion claim.

The court cannot see how PSA can establish a breach-of-contract claim against Great Central given the allegations in the complaint, the public-record documents in the Alameda case, and the parties' representations about the case. But it cannot say that PSA cannot possibly cure the deficiencies in the pleading by alleging more facts. Thus, the court dismisses the contract claim with leave to amend.

## CONCLUSION

The court denies the motion to stay the case under *Colorado River* and grants the motion to dismiss the contract claim without prejudice. The court will address the timing of any amendment to the pleadings at the December case-management conference.

This disposes of ECF No. 142.

**IT IS SO ORDERED.**

Dated: November 3, 2016

LAUREL BEELER

[28] Opposition — ECF No. 160 at 8.

United States Magistrate Judge

United States District Court
Northern District of California