UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| QINGDAO TANG-BUY INTERNATIONAL IMPORT & EXPORT COMPANY, LIMITED,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PREFERRED SECURED AGENTS, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-cv-00624-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>[Re: ECF No. 149] |

## INTRODUCTION

Plaintiff Qingdao Tang-Buy International Import & Export Company ("Tang-Buy") sued the defendants after one of the defendants — Preferred Secured Agents ("PSA"), a retail entity that operates as "Sprocket Kids" — allegedly did not pay for goods that the plaintiff manufactured for PSA.[1] The alleged debt is $578,377.25.[2] PSA counterclaimed against Tang-Buy, its owner Mike Tian, and Michael Kule, Tang-Buy's alleged agent, charging breach of contract surrounding delivery of goods in 2013 and 2014, tortious interference with contract, a breach of the covenant

---

[1] Second Amended Complaint ("SAC") — ECF No. 76. Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] SAC ¶ 15.

ORDER — No. 15-cv-00624-LB

of good faith and fair dealing in connection with the 2014 delivery, and damages in the millions.[3] Mr. Kule moves to dismiss the claims for failure to state a claim against him.[4]

The court held a hearing on November 3, 2016. The court denies the motion to dismiss counterclaims one and two for breach of contract (except that it finds fair notice about Mr. Kule's alleged breach only for delay and not for non-conforming goods), grants the motion to dismiss counterclaim three for tortious interference with contract, and denies the motion to dismiss counterclaim four for breach of the implied covenant of good faith and fair dealing.

## STATEMENT

The plaintiff generally claims breach of contract, and it also claims a fraudulent transfer to the defendant Retail Business Associates ("RBA") after PSA gave RBA a secured interest to prevent the plaintiff from collecting on the debt that PSA owes it.[5] The defendants are PSA, RBA, Hal Reiland, Mark Cardinale, and Glen Hartman.[6] The individuals all are affiliated with PSA, and Mr. Hartman allegedly finances PSA's operations and has the controlling interest in PSA and RBA.[7] Mr. Reiland also is counsel of record for PSA and RBA.

The court's order denying the defendants' motion to dismiss explains the contract between the plaintiff and PSA whereby the plaintiff agreed to provide PSA with children's clothes to sell at retail, PSA's subsequent arrearage, PSA's acknowledgment of its debts, and PSA's agreement to make weekly payments to Tang-Buy from a "lockbox" (a financial account) maintained with PSA's lender, TCA.[8] By November 2014, PSA owed Tang-Buy $578,377.25.[9]

The order and the SAC describe the plaintiff's claim that PSA gave a $1.3-million lien on its

---

[3] Answer and Counter/Cross Claims — ECF No. 121 at 21−26.
[4] Motion — ECF No. 149.
[5] *See, e.g.,* SAC ¶¶ 11–15, 20−21.
[6] SAC ¶¶ 4−8.
[7] *Id.*
[8] Order — ECF No. 73 at 2.
[9] *Id.* at 2; SAC ¶ 15.

ORDER — No. 15-cv-00624-LB                2

assets to RBA to secure PSA's debt to Glenn Hartman (the principal of RBA) to thwart the plaintiff from collecting the $578,377.25.[10] On May 11, 2014, the plaintiff informed PSA that it needed "immediate payment" of $80,000 for goods that it had shipped the previous year and without it, it would not release more goods.[11] The next day, RBA filed a UCC-1 financing statement with the California Secretary of State, recording its security interest in, and placing a lien on, "all PSA assets."[12] Finally, in December 2014, PSA signed an allegedly illusory "Confession of Judgment" in RBA's favor. That document states: "RBA has made demand upon PSA for payment . . . [under] the Promissory Note. . . . PSA . . . is unable to pay the principal and interest. PSA agrees to confess judgment in favor of RBA for the full amount of principal and interest and to allow foreclosure by RBA of all the assets of PSA."[13]

PSA counterclaimed and cross-claimed against persons and entities involved with the manufacture, delivery, and storage of the goods.[14] PSA charged four counterclaims against Tang-Buy, its owner Mike Tian (in two of the four claims), and Mr. Kule, who does business as AFA Sourcing and allegedly is Tang-Buy's agent.[15] The counterclaims are: (1) breach of contract relating to a late delivery of non-conforming goods in 2013; (2) breach of contract relating to a failure to deliver goods in 2014; (3) tortious interference with contract by shipment delays; and (4) breach of the covenant of good faith and fair dealing by holding and delaying 2014 goods.[16]

The first breach-of-contract counterclaim alleges the following: (1) PSA issued purchase orders in 2013 to Tang-Buy and Mr. Kule to manufacture clothes for the 2013 holiday season; (2) Tang-Buy and Mr. Kule accepted the purchase orders and manufactured the clothing, but delivered it too late for the 2013 holiday season; (3) the goods did not meet the specifications in the

---

[10] Order — ECF No. 73 at 2; SAC ¶¶ 20–21.
[11] SAC ¶ 23.
[12] SAC ¶ 24.
[13] SAC ¶ 26.
[14] Answer and Counter/Cross Claims — ECF No. 121.
[15] *Id.* at 21–26.
[16] Id.

purchase orders, were defective, and were late; (4) Tang-Buy and Mr. Kule demanded payment and PSA refused; and (5) the breach resulted in lost revenue of $750,000.[17]

The second breach-of-contract counterclaim alleges the following: (1) PSA issued purchase orders in 2014 to Mr. Kule, who gave them to Tang-Buy and other manufacturers, for the manufacture of clothes for the 2014 spring and summer season; (2) Mr. Kule accepted the orders and gave them to Tang-Buy, which accepted them too; (3) Mr. Kule and Tang-Buy breached the contract by failing to deliver the goods on time and failing to provide adequate documents, which meant that the goods did not clear customs and were not delivered; and (4) PSA suffered total damages of $8.7 million: lost revenue of $5.8 million, an inability to service its obligations to TCA and RBA in the sum of $2.4 million, and operational losses of $500,000.[18]

The third counterclaim for tortious interference with contract incorporates the previous allegations and alleges the following: (1) the 2014 purchase orders included goods manufactured by Tang-Buy, Valley, and WeiHai Dichaing to be delivered in time for the 2014 season; (2) Tang-Buy and Messieurs Tian and Kule — acting in their individual capacities — stopped the 2013[19] purchase orders to force PSA to pay for them and Mr. Kule's commission, despite PSA's issues with the goods; (3) as a result of the stopped and delayed shipments, PSA did not receive the 2014 purchase-order goods on time; (4) Tang-Buy, Mr. Tian, and Mr. Kule knew about the 2014 agreements and their validity and intentionally stopped the shipment of the 2014 goods, thereby interfering with the 2014 agreements; (5) this prevented all of the goods from being shipped and delivered to PSA; and (6) the delay caused delivery out of season, resulting in total damages of $8.7 million: lost revenue of $5.8 million, an inability to service its obligations to TCA and RBA in the sum of $2.4 million, and operational losses of $500,000.[20]

The fourth counterclaim for breach of the implied covenant of good faith and fair dealing

---

[17] *Id.* at 22.

[18] *Id.* at 23.

[19] 2013 is the date alleged in this paragraph; all other allegations in the claim involve 2014. *Id.* at 24–25.

[20] Id.

alleges that Tang-Buy, Mr. Tian, and Mr. Kule breached the implied covenant of food faith and fair dealing by holding and delaying the shipment of the 2014 goods.[21] PSA was allegedly damaged as follows: (1) $966,336.21 resulting from its inability to meet its obligations to Tang-Buy and other manufacturers; (2) lost revenue of $5.8 million; (3) $2.4 million from its inability to service its obligations to TCA and RBA; and (3) operational losses of $500,000.

Mr. Kule moves to dismiss all claims for failure to state a claim under Rule 12(b)(6).[22]

## GOVERNING LAW

The background rule is Rule 8(a)(2), which states that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2)'s "pleading standard . . . does not require 'detailed factual allegations,'" even after *Iqbal* and *Twombly*, and "'[s]pecific facts are not necessary' for pleadings to satisfy Rule 8(a)(2)." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("detailed"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 968 (9th Cir. 2009) ("specific") (quoting *Erickson v. Pardus,* 551 U.S. 89 (2007)). "The level of factual specificity needed to satisfy this pleading requirement will vary depending on the context." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).

"On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chavez v. United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678, and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Mere conclusory statements in a complaint and 'formulaic recitation[s] of the elements of a cause of action' are not sufficient." *Chavez*, 683 F.3d at 1108 (quoting *Twombly,* 550 U.S. at 555). Indeed, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez*, 683 F.3d at 1108 (citing *Iqbal,* 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

---

[21] *Id.* at 25.

[22] Motion — ECF No. 149.

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez*, 683 F.3d at 1108-09 (citing *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Chavez*, 683 F.3d at 1109 (quoting *Iqbal*, 556 U.S. at 679).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

**1. Breach of Contract**

The first issue is whether PSA sufficiently alleged breach of contract in counterclaims one and two. The court concludes that it has.

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1457, 1489 (2006). "A written contract may be pleaded either by its terms — set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference — or by its legal effect." *Haskins v. Symantec Corp.*, No. 13-cv-01834-JST, 2013 WL 6234610, *10 (N.D. Cal. Dec. 2, 2013). "[T]o plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms." *Id.* (citation omitted). A plaintiff need not plead the contract terms with unusual specificity. Allegations that meet the notice-pleading standards of Rule 8 will suffice. *See, e.g., James River Ins. Co. v. DCMI, Inc.,* No. C 11–06345 WHA, 2012 WL 2873763, *3 (N.D. Cal. July 12, 2012). Put differently, "it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision," but "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Langan v. United Servs. Auto. Ass'n,* 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014); *see Sierra View Local Health Care Dist. v. Influence Health, Inc.,* No. 1:15-cv-00689-DAD-SAB, 2016 WL 2346799, *5 (E.D. Cal. May 4, 2016) (holding that fairly

rudimentary contract allegations satisfied Rule 8); *Kentwool Co. v. Netsuite, Inc.*, No. 14–cv–05264–JST, 2015 WL 693552 at *7-8 (N.D. Cal. Feb. 18, 2015).

PSA has done enough to meet this standard. This case is about fairly defined shipments: (1) goods for the 2013 holiday season; and (2) goods for the 2014 spring/summer season. The complaint alleges sufficiently that the purchase orders memorialized the goods and their specifications. This is different from *Haskins*, for example, where the plaintiff tried to "cobble together the terms of an implied contract" from the defendant's advertising campaign, website, and the name of the challenged product. 2013 WL 6234610 at *10. The *Haskins* defendant submitted the license agreement that accompanied the product, but the plaintiff did not point to any terms that the defendant supposedly breached. *Id.* It was not clear to the court that a contract could be built from this. *See id.* By contrast, the complaint here alleges specific purchase orders for specific goods with defined specifications by specific dates, and it alleges breach by late delivery and defective products.

*North County Communications* (cited by Mr. Thule) is distinguishable for similar reasons. *See N. Cnty. Commc'ns Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp. 2d 1112, 1122 (S.D. Cal. 2010). Verizon — citing confidentiality provisions — did not plead the nature of the contract, pertinent dates, or any other terms that would put North County on notice of the basis for the claim. *Id.*

For purposes of Rules 8(a) and 12(b)(6), the complaint gives Mr. Thule reasonable notice of the nature of the contract claims against him, the breach (delay or non-delivery), and the resulting damages. Moreover, this case — whether in Tang-Buy's claims or PSA's counterclaims — involves the parties' disputes about specific goods slated for delivery in the 2013 holiday season and the 2015 spring/summer season.[23] Tang-Buy's claims and PSA's counterclaims at least in part are different stories surrounding the same transactions.

Mr. Kule contends that the complaint does not allege adequately what the specifications were

---

[23] *E.g.*, SAC — ECF No. 76 at 3−5; Answer and Counter/Cross Claims – ECF No. 121 at 21-22.

or how he breached them.[24] "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007). The specifications are captured adequately by the identification of the purchase orders for specific goods tethered to specific time periods. That said, the court reads the counterclaims — at least as charged against Mr. Kule — as being about delay. The lack of conformance to specifications is more rightly charged to the manufacturer Tang-Buy, and the context of Tang-Buy's and PSA's claims against each other illuminates what the issues are, at the pleadings stage, as to each other. But by contrast, Mr. Kule is the broker, and the complaint gives fair notice to him only about delay.

Mr. Kule also argues that PSA did not plead its performance or excuse for nonperformance. Counterclaim one alleges goods that did not meet specifications and were late (for the 2013 holiday season), and thus PSA had to discount them to sell them.[25] Tang-Buy and Mr. Kule demanded payment, but because the goods were not conforming and were late, PSA refused to pay.[26] This adequately pleads excuse for nonperformance. The same result attends to counterclaim two, which charges that the goods did not arrive at all, and as a result, PSA did not pay.[27]

### 2. Tortious Interference With Contract

The third counterclaim charges tortious interference with contract based on alleged shenanigans by Tang-Buy and Messieurs Tian and Kule to interfere with 2013 orders to force PSA to pay Tang-Buy and to pay Mr. Kule's commission.[28]

Under California law, a claim for tortious interference with contract requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

---

[24] Motion — ECF No. 149 at 5−6.
[25] Answer and Counter/Cross Claims — ECF No. 121 at 22.
[26] Id.
[27] *Id.* at 23.
[28] *Id.* at 24−25.

ORDER — No. 15-cv-00624-LB                    8

relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,* 946 F. Supp. 2d 957, 979 (N.D. Cal. 2013) (quoting *Quelimane Co. v. Stewart Title Guaranty Co.,* 19 Cal. 4th 26, 55 (1998)).

Mr. Kule characterizes the claim as a breach-of-contract claim but also asserts that it fails to allege what Mr. Kule did to breach the 2013 purchase orders to game the payment of his commission. This second point is most relevant to the tortious-interference claim, and the court agrees with it. While the context of the 2013 and 2014 orders is more reasonably apparent to the manufacturer Tang-Buy and the customer PSA, it is not obviously so for the broker Mr. Kule. The allegations say nothing about what Mr. Kule allegedly did to force the payment of his commission, and they say nothing to support a stand-alone claim against Mr. Kule for tortious interference with contract. The court dismisses the claim.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

The fourth counterclaim alleges that Tang-Buy and Messieurs Tian and Kule breached the implied covenant of good faith and fair dealing by delaying the shipment of the 2014 goods.[29]

The covenant of good faith and fair dealing is implied in every contract and prevents one party from "unfairly frustrating the other party's right to receive the benefits" of the contract. *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000). To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. *See* Judicial Council of California Civil Jury Instructions § 325 (2011); *see also Oculus Innovative Sciences, Inc. v. Nofil Corp.*, No. C 06-01686 SI, 2007 WL

---

[29] *Id.* at 25.

2600746, at *4 (N.D. Cal. Sept. 10, 2007).

Mr. Kule alleges that this claim is subsumed in the other contract claims because it is essentially the same breach.[30] See Daly v. United Healthcare Ins. Co., No. 10-CV-03032-LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010). That may prove true ultimately. But the counterclaim pleads more than delay (breach); it pleads purposeful delay to frustrate the purpose of the contract. That is sufficient to support the stand-alone claim. The court denies the motion to dismiss counterclaim four.

### 4. Choice of Law

Mr. Kule alleges that it is not clear what choice of law applies.[31] If that is an issue, then the court can address it in subsequent motions practice.

## CONCLUSION

The court denies the motion to dismiss counterclaims one and two, except that it finds notice of Mr. Kule's breach only in the form of delay and not for non-conforming goods. The court grants the motion to dismiss counterclaim three without prejudice and with leave to amend. The court denies the motion to dismiss counterclaim four.

This disposes of ECF No. 149.

**IT IS SO ORDERED.**

Dated: November 3, 2016

_____
LAUREL BEELER
United States Magistrate Judge

---

[30] Motion — ECF No. 149 at 6–7.

[31] Id. at 7–8.